At the present term, the following opinion of the Court, was delivered by
Hornblower, C. J.
It is sufficient to say, that the affidavit received in support of this motion, does not disclose any facts, inducing a reasonable suspicion of fraud. We cannot act upon the belief, of the applicant, though he has sworn to that belief: *365 We must have the facts proved before us, upon which the party’s suspicions are founded, and then we can tell, whether there i any j ust ground for thejn.
But as a more full and sufficient affidavit, may be furnished, and this motion renewed, it may save time and further litigation, to decide at once, upon the right of a person, standing in the situation of Hoy, to be heard on such a motion. This is an application to the Court, for the exercise of its equitable power over confessed judgments; and though the Court has unquestionable authority to interfere and give relief in such cases, yet it cannot be expected, that a Court of law, will exercise that power, at the instance of a party, who would not be entertained in a Court of Equity itself.
Suppose then, Hoy, instead of coming here, had gone into the Court of Chancery, representing himself as an attaching creditor, and setting forth facts clearly indicating fraud in this judgment; would that Court have entertained his bill? I think not.
In Wiggins et al. v. Armstrong et al. 2 John. C. R. 144, Chancellor Kent says. “ This is the case of a creditor on simple contract, after an action commenced at law, and before judgment, seeking to control the disposition of the property of his debtor, under judgments and executions, upon the ground of fraud. My first impression, was in favor of the plaintiffs; but upon examination of the cases, I am satisfied that a creditor at large, and before judgment and execution, cannot be entitled, to the interference, which has been granted in this case. In Angell v. Draper, 1 Vern. 399; and Shirley v. Watts, 3 Atk: 200, it was held that the creditor must have completed his title at law, by judgment andj execution, before he can question the disposition, of the debtors property: and in Bennett v. Musgrave, 2 Vern. 51, and in a case before Lord Nottingham, cited in Balch v. Wastall, 1 P. Wms. 445, the same doctrine was declared; and so it is understood by the elementary writers: Mitford, 115; Coop. Eq. pl. 149. The reason of the rule, seems to be, that until the creditor, has established his title, he has no right to interfere; and it would lead to an unnecessary, and perhaps a fruitless and oppressive, interruption of the exercise of the debtor’s rights. Unless he has, a certain claim upon the property of the debtor, he has no concern with his frauds. On the strength of settled *366 authorities, I shall accordingly, grant the motion for dissolving the injunction.”
I have quoted the whole of this opinion, because it fully expresses my views of the law, applicable to the case under consideration. Hoy, has no right to enquire into the fairness of this judgment, unless he is a creditor. True, he claims to be one, and has sworn to the faot; b'ut does that authorize us to pronounce him such, judicially f If we admit him to interfere between Melville and Brown, it must be, because he is, not because, he claims to be, a creditor of Brown. If he is a creditor, he is only a suing one; a creditor “ at large.” He has, as yet established no “ title,” and it is quite uncertain whether he ever can do so, by the judgment of any Court. Suppose we listen to this motion; and the result of an enquiry into the fairness of this judgment should shew that it is fraudulent, and without consideration : but in the end, it should turn out that Hoy, is no creditor of Brown; what, in such case must we do with the money now in Court ? What could we do, but give it up to Melville ? Hoy would not be entitled to it; and we could not restore it to Brown; for as against him, the judgment is valid. Such a result would be a striking illustration of the justice of Chancellor Kent’s remark, that to permit such an interference might lead, to an unnecessary, fruitless and oppressive interruption of the rights of the parties. We cannot, as was said, by Mr. Justice Southard, in Hendricks v. Mount, (2 South. R. 738.) “ recognize the right of any man, to turn Quixote, and fight against fraud, for Justice sake, alone.”
But it is not enough that a man has a judgment, to entitle himself to the aid of the Court of Chancery, upon the ground of fraud, a party must not only be a judgment creditor, or at least, a creditor, whose title has been judicially established, but must shew that, he has exhausted his legal remedies, or that his debtor has no assets or funds, from which he can get satisfaction, except those that are sought to be reached on the ground of fraud : and this is usually required to be made out by a return of nulla bona, on an execution at law. (Hendricks v. Robinson, 2 Johns. C. R. 283—296; Angell v. Draper, 1 Vern. 399; Shirley v. Watts, 3 Atk. 200; Williams v. Brown, 4 Johns. C. R. 682; McDermott v. Strong, Id. 687.) And in Brinkerhoff v. Brown, 4 Johns. C. R. *367 671, Chancellor Kent reviews all the cases, and fully sustains the doctrine I have stated.
But it was said on the argument, that an attaching creditor stands upon better ground, than one who sues by the ordinary process of the Court: that by attaching the goods in the hands of the sheriff who hold them under execution, the plaintiff in attachment has acquired a lien upon them. This however is a mistake. The attachment no doubt fastens upon the surplus goods, and perhaps upon the surplus money, if any, but the service of an attachment gives the plaintiff no lien upon the goods, in any proper or legal sense of the term. Goods when properly attached, are strictly in custody of the law. They are not in the custody, or subject to the control, of the plaintiff in attachment; Austin v. Wade, 2 Penn. R. 997. He never had possession of them, and could not therefore acquire a lien upon them, such as an attorney has upon deeds and papers, for his costs; a factor, upon goods consigned to him, for his claims as factor; a common carrier, upon the goods he has carried, for his wages; or an innkeeper, upon the horse of his guest, for the amount of his bill. Liens, are of two kinds; 1st. Such as I have enumerated, and some others, which the party acquires by his own act; or 2d-ly. Such as the law creates; as in case of judgment and execution. A judgment, is a lien upon land, and an execution, upon personal property. But the plaintiff in attachment, before judgment, has no such lien. It is true, the defendant in attachment cannot recover the possession and control of the property, without satisfying or securing the plaintiff: not however, because the plaintiff has a lien ; but because the statute has impounded the goods for the double purpose of compelling an appearance by the defendant; and ultimately, satisfying the plaintiff", if any thing is due to him.
A plaintiff in attachment, then, acquires no more right to inquire into the fraud of a prior judgment, than one who has commenced his suit by capias or summons. He is after all, only a suitor, claiming to be a creditor, who may turn out not to be such; or if a creditor, may have other resources, from which he may receive satisfaction. And this suggests another difficulty. If we suffer a creditor at large, whether before, or after suit commenced, to interfere, what sort of an issue, or rather, *368 issues, shall we frame? For it seems to me, we must make at East three distinct issues. Viz: 1st. Whether the applicant is a creditor ? And this must be a preliminary issue: for if he is not a creditor, then he has no right to interfere any further. 2dly. and also as a preliminary inquiry, whether, if the applicant is such creditor, he has not some other resources for the satisfaction of his debt; for, if he has, then he has no right to interrupt the judgment and execution. And Sdly. whether the judgment complained of, is fraudulent, or not; which would be a useless inquiry, if the applicant was hot a creditor; or being a creditor, might get his money from some other source.
In Gerard v. Basse et al. 1 Ball. Ii. 119, a motion was entertained by the Court, to set aside a judgment, in behalf of creditors under a domestic attachment. Whether it was before or after judgment in attachment, does not appear, but the application was not on the ground of fraud, and the judgment was set aside as to one of the defendants, because it had been entered against two, on the bond and warrant of one only. This case certainly gives no countenance to the motion under consideration.
In Frazier v. Frazier, 9 Johns. JR. 80, a feigned issue was ordered on motion in behalf of a creditor; whether a judgment creditor or not, the case does not state. But it appears by a case in 20 Johns. Rep. to which I shall presently refer, that the applicant was a judgment creditor.
In Lawless v. Blackett, 16 Johns. JR. 149, a judgment was opened for the want of a specification, as required by the statute of New York; but it was done at the instance of a judgment creditor. The same thing was done in BrinJcerhoff v. Taylor, as appears by the case of BrinJcerhoff v. Marvin, 5 JoJms. O. JR. 320 &c.
But in Wintringham v. Wintringham, 20 Johns. R. 296, the question whether any but a judgment creditor can interfere on the ground of fraud, came directly before the Court, and the Court say; “ The application is in behalf of a creditor at large, not a judgment creditor. In-Frazier v. Frazier (9 Johns. 80,) according to our recollection, the motion was in behalf of a judgment creditor,” (that it was so, appears by a note to the case.) “The case of Wiggins v. Armstrong, (2 Johns. Chan. R. 144) *369 is analogous : and the Chancellor after examining the cases, refused to grant the party relief, until he had completed his title at law, by judgment and execution. The power exercised by this Court, in staying executions, and setting aside judgments, on the ground of fraud, is an equitable power: and if a Court of Chancery will not grant relief, except in favor of a judgment creditor, a fortiori this Court will not.”
In our own Reports, I find no case, to sustain this motion. In Wood v. Hopkins, 2 Penn. R. 689, the judgment had been irregularly entered, and was opened at the instance of the administrators of the defendant. In Milnor v. Milnor, 4 Halst. 93, this Court set aside a judgment on the ground of irregularity, at the instance of a third person, but he was admitted by the case, to be a creditor, and the Court, whether right or wrong in other respects, expressly take notice of that fact. And in the case of Reed v. Bainbridge, 1 South. R. 351; the Court sustained the motion of Sohenck, on the ground, that he was a purcbaser and in possession of the land affected by the judgment. But in citing this last case, I always beg to be understood as dissenting from the decision of the Court, so far as relates to the validity of the judgment, and the right of Schenck to the relief granted him. But none of these cases justify an interference at the instance of a creditor at large, on the ground either of irregularity or fraud. is or do any of the cases cited by Mr. Justice Rossel-1 in Reed v. Bainbridge, support such a proceeding; for the case of Frazier v. Frazier, 9 Johns. R. 80, to which he refers, was as 1 have shewn, upon the application of a judgment creditor.
I have pursued this subject further than necessary — certainly further than I should have done, i-f I had not understood that some members of the bar have supposed, that an attaching creditor, before he obtains judgment, has a right in this way to call in question the fairness of a judgment against his debtor. In my opinion he has not, and therefore on this ground, if there was no other, the rule must be refused.